O
JS-6

# United States District Court
# Central District of California

MICHAEL PETERSEN,

    Plaintiff,

  v.

ARCH INSURANCE COMPANY; DOES 1–50,

    Defendants.

Case No. 5:15-cv-00832-ODW(GJS)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [8]**

## I. INTRODUCTION

Pending before the Court is a Motion to Dismiss filed by Defendant Arch Insurance Company ("AIC"). (ECF No. 8.) AIC's Motion seeks to dismiss the entire one-count Complaint filed by Plaintiff Michael Petersen. (ECF No. 8.) Petersen, an assignee of a default judgment against a lawyer formerly insured by AIC, is hoping to enforce the judgment against AIC four years after the underlying insurance policy expired. Because the claims-made nature of the insurance policy bars all recovery from AIC, the Court **GRANTS** AIC's Motion to Dismiss. (ECF No. 8.)

## II. FACTUAL BACKGROUND

In May 2009, Mr. Mercury Marilla retained civil rights lawyer Mr. B. Kwaku Duren to bring a lawsuit in federal court. (Compl. ¶ 11.) In June 2009, Duren took out a legal malpractice insurance policy from AIC (hereinafter the "Policy"). (*Id.* ¶ 9.)

The Policy provided coverage from May 20, 2009, through May 20, 2010, and insured Duren up to $300,000. (*Id.* ¶ 10.) The following text appears on the front page of the Policy: "THIS IS A CLAIMS-MADE AND REPORTED POLICY. PLEASE REVIEW THE POLICY CAREFULLY. THE POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD UNLESS AND TO THE EXTENT THAT AN EXTENDED REPORTING PERIOD OPTION APPLIES." (*Id.*, Ex. A at 1.)

In the course of Duren's representation of Marilla in federal court, he missed several important filing deadlines. (*Id.* ¶ 14.) Duren missed a deadline to file an amended complaint on September 13, 2009. (*Id.*) Duren then failed to file an opposition to a motion to dismiss in October 2009. (*Id.* ¶ 17.) As a result of the non-opposition, the District Court dismissed Marilla's complaint on November 13, 2009. (*Id.*) The District Court then denied Duran's *ex parte* application to set aside the judgement. (*Id.* ¶ 18.) On January 25, 2010, Duran filed a notice of appeal to the Ninth Circuit, but his appeal was denied on January 31, 2012. (*Id.* ¶¶ 19, 21.)

On or about May 17, 2012, Marilla filed a legal malpractice suit against Duren in California state court. (*Id.* ¶ 23.) Duren failed to respond to the malpractice suit, and a default judgment was eventually issued on January 6, 2014. (*Id.* ¶ 24.) The default judgment order awarded Marilla $250,480. (*Id.*) On June 18, 2014, Marilla's lawyer conducted a debtor's examination of Duran and first learned of the Policy. (*Id.* ¶ 25.) Marilla's lawyer also learned that Duran had filed bankruptcy and was facing disciplinary action from the State Bar of California. (*Id.* ¶ 26.)

On November 14, 2014, Marilla assigned the default judgement to Petersen. (*Id.* ¶ 27.) On November 18, 2014, Petersen filed a claim with AIC seeking to recover under the Policy. (*Id.* ¶ 28.) AIC denied Petersen's request on December 20, 2014. (*Id.*) Petersen filed this present suit on April 28, 2015. Petersen asserts one cause of action against AIC—breach of contract. (*Id.* ¶¶ 30–38.)

### III. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleading in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks and citations omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citations omitted). "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (internal citations omitted). The Court may consider contracts incorporated in a complaint without converting a motion to dismiss into a summary judgment hearing. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

### IV. DISCUSSION

The parties do not dispute any facts in this case. It is undisputed that the Policy is characterized as a claims-made and reported malpractice insurance policy. It is also

1 undisputed that no malpractice claims were asserted against Duren or reported to AIC
2 during the coverage period.[1] On its face, as argued by AIC's Motion to Dismiss, it
3 appears that AIC did not breach the Policy when it denied Petersen's claim in
4 December 2014 because no claims were made against the Policy during the coverage
5 period. (Mot. 5.) In his Opposition, Petersen argues that (a) he is equitably excused
6 from making a timely claim, (b) any claim would have been "an idle act," and (c) the
7 Policy's terms are unconscionable. (*See* Opp'n.) The Court will discuss all three
8 arguments.

### A. Equitable Excuse

Petersen first argues that Duren purposefully concealed the Policy from Marilla during the course of his "representation." (Opp'n 5.) Since the Policy was concealed, it was allegedly "impossible" for Marilla, or himself, to make a claim and report it to AIC within the coverage period, and therefore he should be equitably excused from those requirements. (*Id.*) In support of this argument, Petersen cites *Root v. American Equity Specialty Ins. Co.*, 130 Cal. App. 4th 926, 939 (2005).

This argument fails for two reasons. First, Duren's alleged concealment of the Policy did not prevent Marilla from bringing a legal malpractice claim. Marilla's lack of knowledge was not an actual or legal barrier to filing a suit—he could have sued Duren whether she knew about the policy or not. It was not "impossible" for Marilla to satisfy at least the claims-made requirement under the Policy. Furthermore, Petersen's lack of knowledge in 2009 is utterly irrelevant because as a third-party

---

[1] Under a "claims-made" insurance policy, "an insurer is responsible for any loss resulting from claims made during the policy period." *Burns v. Int'l Ins. Co.*, 929 F.3d 1422, 1424 n.3 (9th Cir. 1991). A claims-made policy requires the insurer to "assume liability for any errors, including those made prior to the inception of the policy as long as a claim is made during the policy period." *Pac. Employers Ins. Co. v. Super. Ct.*, 221 Cal. App. 3d 1348, 1356–57 (1990). "Claims-made policies can be further classified as either *claims-made-and-reported* policies, which require that claims be reported within the policy period, or general claims-made policies, which contain no such reporting requirement." *Pension Trust Fund for Operating Engineers v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (emphasis original) (citing *Xebec Dec. Partners, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 12 Cal. App. 4th 501, 532–33 (1993)).

4

assignee of a default judgment, he did not obtain any legal rights until the default judgment was entered and it was assigned to him. *See Hand v. Farmers Ins. Exchange*, 23 Cal. App. 4th 1847, 1858 (1994) ("[O]nce having secured a final judgment for damages, the plaintiff becomes a third party beneficiary of the policy, entitled to recover on the judgment on the policy.").

Second, the equitable excuse rule from *Root* is inapplicable. *Root* created a unique, and factually dependent, exception to recovering under a claims-made and reported policy. In *Root*, an attorney was sued for malpractice three days before his claims-made and reported policy expired. *Id.* at 930. The attorney learned of the lawsuit under unusual circumstances two days after his policy expired, and then immediately reported it to his insurer. *Id.* The insurer denied coverage on grounds that the lawsuit was not reported within the coverage period. *Id.* at 931. The California Court of Appeals emphasized that in light the unique factual scenario of the case, "it would be 'most inequitable' to enforce the condition precedent of a report during the period." *Id.* at 948. The court then concluded that "the facts are sufficient to support the equitable excuse of the reporting condition." *Id.* The application of the equitable excuse rule was explicitly limited to the factual situation at hand: "the possibility of no malpractice coverage under a 'claims made and reported' policy where a claim is made very late in the policy period and the insured learns of the claim under highly ambiguous circumstances, so the claim is not reported until there is confirmation of that claim, which is shortly after the policy has expired." *Id.* at 929. The court noted that "by no means do we blanketly apply a blunderbuss 'notice prejudice' rule to this, or any other claims made and reported malpractice policy." *Id.*

The facts of this case are a far departure from *Root* and do not warrant the application of the equitable excuse rule. Marilla's malpractice lawsuit was filed two years after the coverage period terminated, and it was reported to AIC four years after the coverage period terminated. This case does not involve a timely claim made at the end of a coverage period, an "ambiguous" notice, or a report to an insurer forty-eight

hours after a policy expired. While the relevant delays in *Roots* were measured in hours, the delays in this case are measured in years. Thus, equity does not require the Court to excuse both the claim and reporting requirements in the Policy. The Court rejects this first argument.

**B.    Idle Act**

Petersen also argues that the "idle act rule" excuses the untimeliness of Marilla's malpractice lawsuit. (Opp'n 5.) Petersen asserts that Marilla could not bring a malpractice suit against Duren during the coverage period because Duren filed an appeal with the Ninth Circuit and any malpractice suit would lack ripeness until the appeal was resolved twenty-seven months later. (*Id.*) According to Petersen, any suit brought during the appeal would be an idle act and therefore he should be equitably excused from the claims-made condition precedent in the Policy. (*Id.*)

This argument is also meritless. As an initial matter, Petersen cites no law that extends the idle act rule to a claims-made and reported policy. The rule traditionally applies when a party is equitably excused from performing a condition precedent to a contract when such performance would be futile or would cause further harm. *See Gueyffier v. Ann Summers, Ltd.*, 43 Cal. 4th 1179, 1186 (2008). That is simply not the case here. The claim and the notice requirements were indispensable acts that could never be futile or "idle" under the Policy. Additionally, the purpose of the appeal to the Ninth Circuit was not to absolve Duren of malpractice. The malpractice was complete and final when Duren missed the deadline and failed to file an opposition. While the appeal could have reopened Marilla's case, and thus limited the malpractice damages, it could not reverse Duren's breach of duty to his client. Marilla was not prohibited under any law from sending Duren a letter demanding compensation for his failure to adequately perform—a "claim"—in the fall and winter of 2009. There was also nothing prohibiting him from bringing a lawsuit. There is no allegation that Marilla made *any* type of claim during the coverage period. The insurable event under the Policy was the assertion of a claim during the policy period and no such

claim was made. The idle act rule does not apply and the Court therefore rejects this argument.

## C. Unconscionability

Finally, Petersen argues that while the Policy is lawful when applied to Duren, it is unconscionable to apply the claims-made and reported provisions to a third-party beneficiary. Petersen claims that "[a]t no time did AIC provide a copy of the [Policy] to Plaintiff, nor did AIC disclose to Plaintiff any of the limitation clauses to Plaintiff," thus it would be unconscionable to enforce the Policy against him. (Opp'n 8–9.)

This argument is also lacking. Petersen's role in this case is limited. He was assigned Marilla's rights under the default judgment and not the Policy. Peterson was, and remains, a complete stranger to the contract entered into between AIC and Duren. As such, AIC owes no obligation to Petersen. It is worth noting that Petersen does not explain how AIC was supposed to notify him of the terms in the Policy back in 2009. Based on the allegations in the Complaint, AIC first learned of the assignment in 2014. A liability insurer usually never knows the identity of the third-parties who will bring suit against the insured, and Petersen offers no reason why AIC would voluntarily contact him or Marilla when the Policy was first issued. There is certainly no law that requires such disclosure. As noted earlier, *see supra* note 1, claims-made and reported insurance policies are perfectly legal. Petersen's unconscionability argument is rejected.

## V. CONCLUSION

The Court is sympathetic to Marilla's inability to recover for the harm he suffered. Duren's alleged conduct is abhorrent, at a minimum. However, recovering from AIC is not possible under the law. Petersen failed to state a claim for relief upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). For the reasons discussed above, the Court hereby **GRANTS** AIC's Motion to Dismiss. (ECF No. 8.) Petersen provided no indication that amending the Complaint is possible, and based on the undisputed language in the Policy, the Court concludes that granting Petersen leave to

amend would be futile. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

June 30, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**